**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| LEONARD R. HOFMANN, | ) | No. CV-08-00985-PHX-GMS |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Pending before the Court is the appeal of Plaintiff Leonard R. Hofmann, which challenges the decision of the Social Security Administration ("SSA") to deny benefits. (Dkt. # 20.) For the reasons set forth below, the Court affirms that decision.[1]

**BACKGROUND**

On April 9, 2002, Plaintiff applied for disability insurance benefits, alleging a disability onset date of November 1, 1998. (R. at 77-82.) Plaintiff's date last insured ("DLI") for disability insurance benefits, and thus the date on or before which he must have been disabled, was December 31, 2003. (*See* R. at 82.) Plaintiff's claim was granted, but

---

[1] Plaintiff has requested oral argument on this matter. That request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

he was found disabled only as of September 3, 2002. (R. at 35-36.) Plaintiff requested reconsideration, asserting that he should have been found disabled as of November 1, 1998. (R. at 41-42.) In ruling on the request for reconsideration, the Social Security Administration stated that "the previous determination denying your claim was proper under the law," and the SSA went on to explain that there was insufficient evidence in the record to support any finding of disability. (R. at 44-47.) Plaintiff's disability payments were thereafter terminated. (R. at 49-50.) Plaintiff again requested reconsideration. (R. at 48.) It appears that this request for reconsideration was never ruled on and that the case was pursued through Plaintiff's later appeal to an Administrative Law Judge ("ALJ"). (R. at 51.) The ALJ conducted an initial hearing on the matter on December 8, 2005 (R. at 453-68) and a full hearing on April 17, 2006 (R. at 469-507).

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[2] (R. at 18-26.) At step one, the ALJ

---

[2]The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. at 20.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of "status post right hip replacement," "status post bilateral knee replacements," and "status post left hip replacement." (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.*) At that point, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC"), concluding that Plaintiff could perform light work. (R. at 24.) The ALJ thus determined at step four that Plaintiff retained the RFC to perform his past relevant work as a systems analyst and manager of computer operations. (*Id.*) The ALJ therefore did not reach step five. (*See id.*) Given this analysis, the ALJ concluded that Plaintiff was not disabled. (R. at 25.)

The Appeals Council declined to review the decision. (R. at 7-9.) Plaintiff filed the complaint underlying this action on May 27, 2008, seeking this Court's review of the ALJ's denial of benefits.[3] (Dkt. # 1.) The matter is now fully briefed before this Court. (Dkt. ## 20, 24, 29.)

**DISCUSSION**

**I. Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

---

[3]Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

1 However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

Plaintiff argues that the ALJ erred by: (A) rejecting his subjective complaint testimony (Dkt. # 20 Pt. 3 at 4-14), (B) finding that he retained the residual functional capacity to perform light work (*id.* at 15), and (C) concluding that he could perform his past relevant work (*id.* at 15-16). The Court will address each argument in turn.

### A. Subjective Complaint Testimony

Plaintiff first argues that the ALJ erred in rejecting his subjective complaint testimony. (*Id.* at 4-14.) "Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C. § 423(d)(5)(A) (2006)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Rather, the ALJ must determine whether the impairment or combination of impairments "could reasonably be expected to produce [the] pain or other symptoms." *Batson*, 359 F.3d at 1196 (quotation omitted). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ may consider "at least" the following factors when weighing the claimant's credibility:

> [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

*Thomas*, 278 F.3d at 958-59 (internal quotations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Id.* at 958. The ALJ meets this standard by providing a "narrative discussion" containing "specific reasons for [his] finding" that are "supported by the evidence in the case record." *Robbins*, 466 F.3d at 884 (quoting S.S.R. 96-7p (July 2, 1996)).

In this case, Plaintiff complained of visual deficits, as well as pain in his hips, knees, back, and right shoulder. (*See* R. at 108, 483-86.) Plaintiff has had several knee and hip surgeries (*see* R. at 175, 474), and he has a history of being treated for osteoarthritis and degenerative joint disease (*see* R. at 86, 167, 177). He testified that he stopped working in November of 1998 because of vision problems, back pain, and knee pain. (R. at 483, 485.) Plaintiff also asserted that he could not perform any significant physical activity on consecutive days, and he reported that he had difficulty sitting at a desk for an extended period of time because he had to get up and move around. (R. at 486-87.)

The ALJ thoroughly summarized the subjective complaint testimony and the accompanying evidence. (R. at 20-24.) The ALJ agreed that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (R. at 21.) The ALJ based this conclusion on a broad spectrum of evidence suggesting that Plaintiff was not totally disabled by his pain.

While the ALJ acknowledged that Plaintiff had undergone several surgeries, the ALJ found that Plaintiff recovered well from his surgeries. (R. at 21-22.) Plaintiff experienced no complications from his right total hip arthroplasty in January of 1998, and there was no evidence of significant treatment for hip pain following that surgery. (R. at 22; *see* R. at 175, 276.) The ALJ also pointed out that Plaintiff's left hip replacement surgery in June of 2004 fell outside the insurance period and presented no evidence that Plaintiff was totally disabled prior to December 31, 2003, the DLI. (R. at 22; *see* R. at 336 (stating in May of 2004 that the left hip pain "has gotten significantly worse over the last three months").)

Plaintiff also has a history of knee problems and knee surgeries. Even before his surgeries, however, Plaintiff had a history of effective treatment; for instance, injections he received in the late 1990s resolved his symptoms for approximately six months. (R. at 22; *see* R. at 136, 197, 207, 274-76.) Plaintiff had good results following his bilateral knee replacements in early 2002. (R. at 20; *see* R. at 106, 175, 220-21.) Plaintiff was treated with physical therapy following his knee replacement surgeries, and the ALJ noted that the medical records reflect that treatment had been effective in relieving Plaintiff's symptoms. (R. at 20, 22; *see* R. at 181-82, 220-21, 406-18.) Plaintiff reported one month after these surgeries that his pain had been relieved, six weeks thereafter he reported only minimal discomfort, and two months afterward Plaintiff reported a full return to his previous recreational and functional capacities. (R. at 22; *see* R. at 106, 175, 181-82.) Plaintiff reported that his level of pain and mobility at the end of May 2002 were "the best in years." (R. at 22; *see* R. at 181.) A full year after the surgeries, Plaintiff continued to be "doing much better" and he remained "very happy" with the results of the knee surgeries. (R. at 22; *see* R. at 220-21, 344.)

The ALJ further noted that, throughout the relevant period, Plaintiff maintained an active lifestyle. (R. at 22; *see* R. at 197, 207, 347, 486-87, 495-96.) Although Plaintiff reported problems with stairs and hiking, he was able to golf for eighteen holes "without problems" and to walk several miles, all without anti-inflammatory medication. (R. at 22; *see* R. at 197, 207, 486-87, 495-96.) He also mountain biked regularly, from thirty to forty-

five minutes at a time, up until 2001. (R. at 22; *see* R. at 205, 347, 486-87, 495-96.) In 2002, Plaintiff was still golfing regularly and also working out a gym three times per week, and in 2003 he was even occasionally playing basketball. (R. at 22; *see* R. at 181, 344.) Like the ALJ, Plaintiff's own physician took this last activity as an indication that Plaintiff's knees were functioning well. (R. at 22; *see* R. at 344.)

The ALJ found that Plaintiff's other proffered evidence of total disability was similarly unconvincing. The ALJ concluded that Plaintiff's intermittent treatment for back and shoulder pain, with little evidence of such pain during the relevant period, did not suggest serious limitations. (R. at 22.) For instance, Plaintiff's shoulder was examined in June of 2003, and Plaintiff was satisfied with its functioning and received nothing for any shoulder pain. (R. at 23; *see* R. at 342 ("[Plaintiff] does not need to take anything for the [shoulder] pain. He can live with it and certainly does not have enough to do anything about [it] . . . . Functionally, he says he is quite satisfied with the way his shoulder is at this time").) Plaintiff's physician agreed that Plaintiff was asymptomatic and needed no treatment at that time. (R. at 23; *see* R. at 342.) Likewise, while Plaintiff did report fluctuating levels of back pain in 2004, the ALJ noted that Plaintiff has managed his pain without narcotic medication and that there is no indication that this pain would have resulted in disabling limitations before the DLI. (R. at 23; *see* R. at 106, 339.) In reaching that conclusion, the ALJ relied heavily on the fact that Plaintiff's treatment for pain has been primarily with over-the-counter medications. (R. at 23; *see, e.g.*, R. at 106, 197, 207, 487.)

With respect to the alleged vision problems, which ultimately required eye surgeries (*see* R. at 157-59), the ALJ noted that Plaintiff's best corrected vision was 20/25 (R. at 21; *see* R. at 176). The ALJ also reasoned that Plaintiff's continued ability to drive and play golf suggested that his vision problems were not totally disabling. (R. at 21; *see* R. at 477, 486, 488.) Based on the record, the ALJ concluded that Plaintiff's vision issues did not even constitute a "severe" impairment (R. at 21), a conclusion that Plaintiff does not challenge in this case.

The ALJ also found Plaintiff's assertions of totally-disabling pain less credible because of inconsistencies in the record. (R. at 23.) For instance, Plaintiff reported that, after retiring, he had significantly restricted his activity level as a result of his impairments (R. at 267-69), a statement the ALJ found inconsistent with the physically active lifestyle described above, which included golfing, mountain biking, walking for miles, working out at a gym, and playing basketball (R. at 23). The ALJ specifically pointed to the amount of golf Plaintiff played as an example of inconsistency in the record. (*Id.*) While Plaintiff asserted that he played nine holes of golf per week (R. at 488), there was evidence that he would play eighteen holes of golf and would do so more than once per week (R. at 250, 271). In fact, as the ALJ noted, Plaintiff actually organized and played in a local golf league. (R. at 23; *see* R. at 247, 250, 492.) Additionally, the ALJ found Plaintiff's allegations of disabling pain inconsistent with his ability to take a two-month trip to Chicago well after the alleged onset date. (R. at 23; *see* R. at 147.)

Finally, the ALJ noted that a non-examining physician's review of Plaintiff's case concluded that Plaintiff was not disabled. (R. at 24; *see* R. at 224-232.) Based on all of this evidence, the ALJ found that the record did not support Plaintiff's allegations of totally disabling pain.[4]

Plaintiff concedes that the ALJ made "specific and clear findings." (Dkt. # 20 Pt. 3 at 3.) Also, Plaintiff never argues that the ALJ erred in relying on any of the types of evidence on which he found Plaintiff not entirely credible. Plaintiff's argument, rather, is that the ALJ misconstrued the record and ignored other important evidence. (*See id.*) Plaintiff's principal assertion of error in this regard is that the ALJ placed too much emphasis on Plaintiff's ability to recover from surgeries and not enough on his symptoms before

---

[4]The ALJ also rejected the opinion of the state agency examining physician, who had opined that Plaintiff could not work on a sustained basis for eight hours per day. (R. at 23-24; *see* R. at 175-78.) Plaintiff does not challenge the ALJ's rejection of this opinion; he only argues that the ALJ erred in rejecting his subjective complaint testimony.

- 8 -

surgeries. (*Id.* at 5-10.) Plaintiff contends that the ALJ's perspective was too "narrow" and therefore "violates the prohibition on selective quotation from treatment records." (*Id.* at 9.)

As an initial matter, it is well-established that an ALJ may rely on evidence that a claimant responds well to treatment as indicating that his subjective complaints are not entirely credible. *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (relying upon the fact that a claimant "responded well to treatment" in affirming the ALJ's adverse credibility finding). Thus, Plaintiff's suggestion that the ALJ should not have considered Plaintiff's recovery from surgeries as he did is not correct. Regardless, as described above, the ALJ thoroughly discussed all of Plaintiff's medical problems related to the asserted impairments, both pre- and post-operatively, relying on both pre- and post-operative treatments and physical activities in concluding that Plaintiff's assertion of totally disabling pain was not credible. (*See* R. at 20-24.)

In any event, the ALJ's interpretation of the record will not be disturbed by this Court if it is rational. *Batson*, 359 F.3d at 1198. An ALJ could easily infer that a claimant is not totally disabled where, as here, the claimant was capable of extended, long-distance travel; responded well to treatment; made use of generally conservative pain management; was considered not disabled by reviewing physicians; and engaged in numerous physical activities throughout the period of alleged disability. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (affirming the ALJ's rejection of subjective complaint testimony where the ALJ interpreted evidence of long-distance travel as being inconsistent with claims of disabling pain); *Crane*, 76 F.3d at 254 (finding that substantial evidence supported the ALJ's rejection of subjective complaint testimony based upon evidence that the claimant responded well to treatment); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming the ALJ's rejection of the claimant's subjective complaint testimony and relying on the fact that "the claimant has not been using [] strong Codeine or Morphine based

analgesics that are commonly prescribed for severe and unremitting pain")[5]; *Thomas*, 278 F.3d at 958-59 (holding that, in evaluating a claimant's credibility, "[t]he ALJ may consider . . . testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains"); *Gardner v. Astrue*, No. 08-145-AC, 2009 WL 1505303, at *4-5 (D. Or. May 27, 2009) (affirming the credibility determination of the ALJ where the claimant had engaged in various types of activities, including playing golf several times a week); *Jacob v. Astrue*, No. CV-07-6118-RC, 2008 WL 4330266, at *6 (C.D. Cal. Sept. 18, 2008) (affirming the ALJ's adverse credibility finding based in part on the claimant's ability to exercise and go on walks). Because the ALJ relied on legitimate evidence and drew reasonable conclusions therefrom, the Court will not second-guess the ALJ's conclusion.

Many of Plaintiff's other arguments are based on incorrect characterizations of the record. Plaintiff argues that the ALJ "mistakenly disregarded objective evidence . . . that established the presence of medically determinable physical conditions or 'impairments.'" (Dkt. # 20 Pt. 3 at 5.) To the contrary, the ALJ agreed with Plaintiff that he suffered from the asserted impairments, and he likewise agreed that the impairments were likely to produce Plaintiff's symptoms. (R. at 21.) The ALJ simply found that Plaintiff's assertions of the severity of his symptoms, and of the limiting effects thereof on his ability to work, were overstated. The ALJ's analysis is therefore fully in line with the procedures required by the regulations, *see* S.S.R. 96-7p, and Plaintiff's assertion of error on this point is unavailing.

Plaintiff also contends that the ALJ "summarily dismissed" his visual complaints (Dkt. # 20 Pt. 3 at 10), but that is similarly not the case. The ALJ agreed that Plaintiff had a history of visual problems, and he properly explained his conclusion that Plaintiff's corrected vision, and his ongoing ability to engage in activities that required the ability to see (like driving and

---

[5]The Ninth Circuit's conclusion in this regard also disposes of Plaintiff's argument that the ALJ should not have concluded that Plaintiff's failure to seek stronger pain medications indicated that his assertions of totally disabling pain were not credible. (*See* Dkt. # 20 Pt. 3 at 10.)

golfing), belied Plaintiff's assertion that he could not perform any work at all. (R. at 21.) The ALJ thus provided the requisite "narrative discussion" containing "specific reasons for [his] finding," and, as laid out above, those findings are "supported by the evidence in the case record." *Robbins*, 466 F.3d at 884 (quoting S.S.R. 96-7p). The ALJ's conclusion from the evidence that Plaintiff's visual impairments were not totally disabling is rational, and therefore it will not be disturbed. *Batson*, 359 F.3d at 1198.

Plaintiff's criticisms of the ALJ's handling of the inconsistencies in the record (Dkt. # 20 Pt. 3 at 11-13) likewise are unavailing. Plaintiff argues that the ALJ should not have found his statement that he tried to play only nine holes of golf per week inconsistent with the evidence that he played significantly more – often at the pace of a full eighteen holes of golf several times per week – because "there were only three times that Mr. Hofmann played without at least a one-day break." (*Id.* at 12.) Even if true, that does not change the fact that Plaintiff's representations about the amount of golf he played were inconsistent with the evidence in the record. Plaintiff's argument, like the rest of his arguments in this section, go to the weight the ALJ should have accorded the evidence (*see id.* at 11-12 (arguing that "Plaintiff never denied playing golf," "he was never advised to stop walking, biking, or golfing," and "he generally rode in a golf cart")), and thus cannot form a proper basis for this Court to reverse the ALJ. *See Andrews*, 53 F.3d at 1039; *Batson*, 359 F.3d at 1198; *Matney*, 981 F.2d at 1019.

There is one aspect of the discussion of inconsistencies in the record on which the ALJ may have made a mistake. The ALJ stated that Plaintiff "never discussed returning to work with treating medical professionals," but he did "report to his treating physician that he hoped to return to motorcycle racing." (R. at 23; *see* R. at 221, 363, 369.) The ALJ found this inconsistent with Plaintiff's present assertion that he had expected to return to work after his medical problems were resolved. (R. at 23; *see* R. at 497.) As Plaintiff points out, he did mention a desire to begin a consulting firm to a physician, which could be construed as a return to working. (R. at 377.) While the ALJ may have simply been referring to a "return" to Plaintiff's past work, rather than beginning a new type of work, the Court need not parse

the ALJ's language so closely. Even if the ALJ's statement that Plaintiff "never" discussed returning to work with treating medical professionals was not strictly correct, the ALJ's broader point (that Plaintiff showed much more interest in recreation than returning to work, while suggesting the opposite to the SSA) remains salient. In any event, any error would have been harmless because it would not have affected the ALJ's ultimate conclusion. *See Batson*, 359 F.3d at 1197 (explaining that an ALJ's error is harmless if it does not affect his ultimate conclusion). This was but one statement amidst a litany of unassailable reasons offered by the ALJ for discounting Plaintiff's allegation of totally disabling pain, and there is no indication that this reason played a significant role in the ALJ's analysis. Thus, the ALJ did not commit reversible error on this point. *See id.* at 1196-97 (holding that a single error in a credibility determination was harmless error because the ALJ gave numerous reasons for finding the claimant not credible that were supported by substantial evidence); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) ("[T]he ALJ's error . . . does not negate the validity of the ALJ's adverse credibility finding. . . . [T]he remaining valid reasons supporting the ALJ's determination are not relatively minor. They are specific findings related to Carmickle's ability to perform vocational functions, and they clearly demonstrate that to the extent the ALJ found Carmickle's testimony incredible, the ALJ did not do so arbitrarily.") (internal citations and quotations omitted).

Plaintiff's final argument in this section is that his physicians' failure to indicate that he had more significant limitations than those found by the ALJ was attributable not to the absence of disability, but rather to the fact that none "of Plaintiff's treating physician's [sic] were ever asked" to note his disability. (Dkt. # 20 Pt. 3 at 14.) That might be a possible explanation, but the ALJ's conclusion that this indicated an absence of complete disability is rational and therefore will not be disturbed. *See Batson*, 359 F.3d at 1198. Thus, the ALJ properly rejected Plaintiff's subjective complaint testimony, and his determination is not subject to reversal on this point.

1        **B.**     **Residual Functional Capacity**

Plaintiff next argues that the ALJ erred in calculating his RFC. (Dkt. # 20 Pt. 3 at 15.) RFC is defined as the most the claimant can do despite the limitations caused by his impairments. S.S.R. 96-8p (July 2, 1996). The RFC determination may be based on a wide variety of evidence in the record – the claimant's medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributable to a medically determinable impairment, evidence from attempts to work, the need for a structured living environment, and work evaluations. *Id.* "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . ." *Id.* A court must "affirm the ALJ's determination of [the claimant's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, the ALJ concluded that Plaintiff had the RFC to perform light work. Light work requires exerting up to twenty pounds of force occasionally, ten pounds frequently, and/or a negligible amount of force constantly, and it also covers work that requires a significant amount of walking or standing. U.S. Dep't of Labor, *Dictionary of Occupational Titles* app. C (4th ed. 1991), *available at* http://www.oalj.dol.gov/public/dot/references/dotappc.htm. Contrary to Plaintiff's assertion, the ALJ provided a narrative discussion and he made numerous citations to evidence in the record that support the conclusion that Plaintiff could perform light work. (R. at 21-24.) The most important reference is to the medical evaluation made by the state agency reviewing physician on June 20, 2003. (R. at 224-31.) That evaluation provides that Plaintiff can lift twenty pounds occasionally, ten pounds frequently, and can stand for six hours and sit for six hours in an eight-hour workday. (R. at 225.) This evaluation dovetails precisely with the ability to perform light work. Thus, the ALJ did not commit reversible error.

### C. Past Relevant Work

Plaintiff's final argument is that the ALJ erred in concluding that he could perform his past relevant work. (Dkt. # 20 Pt. 3 at 15-16.) Although the contours of Plaintiff's argument are not entirely clear given the brevity of this section, Plaintiff appears to be arguing that the ALJ should not have concluded that he could perform his past relevant work, which required a sedentary exertional capacity, based on a finding that Plaintiff could perform light work. (*See id.*) The vocational expert testified that Plaintiff's past work was merely sedentary (R. at 500-03),[6] and "[i]f someone can do light work, we determine that he or she can also do sedentary work," because sedentary work is a less demanding exertional capacity than light work. *See* 20 C.F.R. § 404.1567(b). Therefore, the ALJ did not err in concluding that Plaintiff's ability to perform light work established his ability to perform his past sedentary work.

Plaintiff also states that the ALJ's determination was "premised on misrepresentations of the evidentiary record" (Dkt. # 20 Pt. 3 at 15-16), although Plaintiff does not state what those misrepresentations are. To the extent Plaintiff is arguing that the ALJ misconstrued the evidence relied on throughout his decision, the Court finds ALJ's construction of the record rational for the reasons discussed above. Thus, the Court finds no error.

---

[6]Plaintiff argues for the first time in his reply brief that the vocational expert testified "that he in fact could, and did, not find a description of Plaintiff's past work, but only of a close job title," which he argues is not sufficient for the step four evaluation. (Dkt. # 29 at 4-5.) The Court need not consider arguments raised for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Regardless, Plaintiff's description of the vocational expert's testimony is disingenuous. The vocational expert did describe "systems analyst" as the "closest job title," but he immediately thereafter explained that "every company is going to have different names" and that the occupation he had selected was "really it because [] the definition of that job encompasses what [Plaintiff] did." (R. at 501.) Thus, the Court finds no error.

**CONCLUSION**

The ALJ made no error of law and there is substantial evidence to support the ALJ's denial of benefits.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **TERMINATE** this action.

DATED this 12th day of August, 2009.

_____
G. Murray Snow
United States District Judge